WEBSTER S. SCHULTZ, complainant,

*v.*

CHARLES D. PARTRICK and GRACE PARTRICK, his wife, defendants.

[Decided April 6th, 1932.]

*Messrs. Whittemore & McLean,* for the complainant.

*Mr. Louis C. Lehmann, Jr.,* for the defendants.

CHURCH, V. C.

This is a bill for the foreclosure of a mortgage. Defendants executed it to one Bouton on January 2d, 1920, for $3,500. Bouton assigned it to complainant and it was recorded on February 11th, 1921. The bond, mortgage and assignment were delivered to complainant assignee and he has never parted with their possession. The interest was paid to William F. Groves, an attorney-at-law, and by him transferred to Schultz.

The mortgagors-defendants allege that they paid Groves installments on account of principal, aggregating $1,580. It is clear that Schultz had no knowledge of these payments. The bond and mortgage do not provide for any installment payments. Defendants allege, first, that Groves was the agent of Schultz; second, that Schultz has acknowledged

the general agency by recognition and ratification; and, third, that they had no notice of the assignment. Schultz denies that he ever constituted Groves his agent to collect any part of the principal of any of his mortgages. Groves testified that Schultz never gave him any specific authority to collect principal. Defendants seek to discredit Groves' testimony, but it should be borne in mind that he was their own witness. The defendants further contend that the interest payments transmitted by Groves to Schultz establish a general agency to collect principal. This contention is disposed of by Vice-Chancellor Lewis in the recent case of *Kues* v. *Di Maria, 108 N. J. Eq. 347,* in which he says (at *p. 348*) :

"The law seems well settled that no authority to receive payments on account of principal can be implied from the existence of an agency to receive interest. The court of errors and appeals in *Steadman* v. *Foster, 83 N. J. Eq. 641,* where the facts were almost identical with those here, said (at *p. 643*) :

" 'It is further claimed that the evidence showed that Feick was authorized to receive payments of principal as Mrs. Steadman's agent; but this claim cannot be supported. The practice of permitting attorneys-at-law to receive and give acquittances for interest payments is common; but the habitual payment of interest to any attorney-at-law who in turn remits it to the mortgagee, does not establish his authority to receive the principal or any part thereof, especially when he has not the custody of the papers. *27 Cyc. 1389; Cox* v. *Cutter, 28 N. J. Eq. 13.* Nor does it amount to a holding out of the attorney as agent so as to create any estoppel against the mortgagee. *Lawson* v. *Nicholson, 52 N. J. Eq. 821.'*

"The rule of *Steadman* v. *Foster* was followed and applied by the court of errors and appeals in *Workman* v. *Eyler, 94 N. J. Eq. 526.*

"Although the defendants apparently acted in good faith in making payments on account of principal to Scott, under

the circumstances shown here, the law places the burden of bearing the loss upon them, and accordingly they must pay the full amount of the principal sums due on the two mortgages."

Groves never had the bond, mortgage or assignment in his possession when any payments of either principal or interest were made. In *Haines* v. *Pohlman, 25 N. J. Eq. 179,* Chancellor Runyon said:

"It is well settled that a debtor is authorized to infer that an attorney or agent who has been employed to make a loan, is empowered to receive both principal and interest, from his having possession of the bond and mortgage given for the loan, or of the bond only. But the inference in such cases is founded on the custody of the securities, and it ceases whenever they are withdrawn by the creditor; and it is incumbent on the debtor who makes payment to the attorney or agent, relying upon such inference, to show that the securities were in his possession on each occasion when the payments were made."

This doctrine is approved in *Steadman* v. *Foster, 83 N. J. Eq. 641; Workman* v. *Eyler, supra.*

Defendants also seek to show that Schultz by his conduct and dealings with Groves acknowledged him as agent and that he was so regarded by the public, with Schultz's sanction. This is purely a question of fact and the testimony does not substantiate it. Several books were marked in evidence. One page contains an account entitled, "Charles Partrick, Vista Avenue, block 2, lot 12." This is a personal account between Groves and Partrick in which Schultz's name does not appear. It is sufficient to say of the other accounts cited to prove acknowledgment and ratification, that they fall as far short of doing so as the one already referred to. They do show, however, that Groves submitted to Schultz the Partrick property for approval for mortgage purposes and that Schultz agreed to take the mortgage. This negatives the contention that Groves invested Schultz's money at his own discretion. They also show that money was received from

one Decker in payment of a mortgage and immediately reinvested in the Partrick mortgage, of which Schultz had already approved—instead of being left in Groves' hands to invest as he saw fit. There is no evidence that Partrick knew of these books, had any knoweldge of what the relations of Groves and Schultz really were, and ever made any attempt to find out the true state of affairs from Schultz. His sole authority for believing in Groves' agency was Groves' statement to him. After the irregularities in Groves' accounts were discovered, Schultz and Partrick had several discussions about the matter. Mr. Partrick insists that he had no notice of the assignments to Schultz. The assignment was recorded. It is unnecessary to decide whether this is, under the cases, constructive notice, because Partrick undoubtedly had actual notice. He, himself, testified that he had in his possession from the time of the assignment of the mortgage certificates of insurance policies, duly endorsed, showing the loss, if any, first payable to Webster S. Schultz, first mortgagee.

I have no doubt that Mr. Partrick made payments in good faith to Groves, thinking they would be transmitted to Schultz, but Groves betrayed his confidence and Schultz never received the money. As Vice-Chancellor Green said, in *Lawson* v. *Carson, 50 N. J. Eq. 370* (at *p. 378*):

"It is a hard case, as before stated, but the recognized rule is where one or the other of two innocent parties, must suffer by the fraud of a third, the loss should be sustained by the one whose conduct has made the fraud possible."

This is an oft reiterated equitable principle and was approved by the court of errors and appeals in *Parkview Building and Loan Association of Newark* v. *Rose, 90 N. J. Law 614* (at *p. 616*).

I will advise a decree according to the prayer of the bill.